427 So.2d 945 (1983)
DEPOSIT GUARANTY NATIONAL BANK
v.
D.A. BIGLANE, Receiver, John S. Roberts, Nelson Case, J.C. Burgess, III and Richard E. Stratton, III.
No. 53511.
Supreme Court of Mississippi.
January 14, 1983.
Rehearing Denied March 9, 1983.
As Modified on Denial of Rehearing April 13, 1983.
*946 Young, Scanlon & Sessums, Pat H. Scanlon, Jackson, for appellant.
Richard E. Stratton, III, Brookhaven, for appellee.
Before SUGG, P.J., and ROY NOBLE LEE and DAN M. LEE, JJ.
En banc.
SUGG, Presiding Justice, for the Court:
This appeal is from a decree of the Chancery Court of Jefferson County terminating a receivership, declaring Deposit Guaranty National Bank to be the owner of a 10% interest in the assets of the Alcorn Pipeline Company, and denying the Bank's petition for partition. For a proper understanding of the issues it is necessary that the facts be set out in detail.

STATEMENT OF THE FACTS
On January 25, 1967, Nelson Case and John S. Roberts entered into a contract with the Board of Trustees of State Institutions of Higher Learning to construct a natural gas pipeline to furnish natural gas to Alcorn A. & M. College for a period of twenty years from the date of completion of the pipeline.
On August 1, 1967, the Mississippi Public Service Commission granted a temporary certificate of public convenience and necessity to John S. Roberts, Nelson Case and Richard E. Stratton, III d/b/a Alcorn Pipeline Company to construct a gas pipeline from a meter station provided by Union Gas Company to Alcorn A. & M. College.
On December 14, 1967, Nelson Case, John S. Roberts, Richard E. Stratton, III and J.W. Burt d/b/a Alcorn Pipeline Company (APC) entered into a contract with the Board of Trustees of State Institutions of Higher Learning. This contract canceled the previous contract of January 25, 1967, between Nelson Case and John S. Roberts and the Board of Trustees. The contract stated that APC was in the process of constructing a natural gas pipeline from Union Gas Company to Alcorn A. & M., and that APC agreed to complete the pipeline and connect it with the gas line system of the college on or before January 4, 1968. APC agreed to furnish natural gas to the College for twenty years from and after completion of the pipeline at rates to be fixed by the Mississippi Public Service Commission. The contract stated that APC was owned as follows:

 Nelson Case 28 1/2%
 John S. Roberts 59 1/2%
 Richard E. Stratton, III 10%
 J.W. Burt 2%

On April 11, 1968, the Mississippi Public Service Commission granted a permanent certificate of public convenience and necessity *947 to John S. Roberts, Nelson Case and Richard E. Stratton, III[1] d/b/a Alcorn Pipeline Company to construct, maintain and operate the gas pipeline covered in the temporary certificate issued on August 1, 1967.
APC encountered financial difficulty and on February 15, 1968, a judgment in excess of $23,000 was entered in the Circuit Court of Lincoln County against John S. Roberts, Nelson Case, and Richard E. Stratton, III, partners, d/b/a Alcorn Pipeline Company. The judgment impressed a lien on the pipeline and directed the sheriff to sell the property to satisfy the judgment.
On June 3, 1968, the Mississippi Public Service Commission entered an order directing issuance of a citation to John S. Roberts, Nelson Case and Richard E. Stratton, III to show cause why they should not comply with the previous orders of the Commission and correct certain listed deficiencies in the pipeline. On June 26, 1968, the Mississippi Public Service Commission cancelled the certificate of public convenience and necessity previously issued to Roberts, Case and Stratton effective forty-nine days from the date of the order.
The State of Mississippi, Ex Rel, Joe T. Patterson, Attorney General and W. Hampton King, Auditor of Public Accounts, for the use and benefit of Alcorn A. & M. College and Board of Trustees of State Institutions of Higher learning, filed a bill of complaint in the Chancery Court of Jefferson County to appoint a receiver for the partnership owned by Case, Roberts, Stratton and Burt doing business as APC. The bill alleged that APC had failed to pay complainant $74,552.40 advanced for the construction of the pipeline, had operated the line in such a manner that the certificate of public convenience and necessity had been canceled by the Mississippi Public Service Commission, had permitted judgments impressing a lien on the pipeline to be rendered, had over-billed Alcorn A. & M. College for gas, and had operated the pipeline in such a manner that an adequate supply of natural gas was not assured Alcorn A. & M. College.
On August 23, 1968, the Chancery Court of Jefferson County appointed D.A. Biglane as receiver of the property and assets of the partnership and directed him to take possession and control of the pipeline, to repair it in accordance with the citation issued by Mississippi Public Service Commission, and to pay the liabilities of the partnership from receipts derived from the operation of the pipeline in the order of priority established by the court.
On May 26, 1967, John S. Roberts executed a deed of trust on a 10% interest in the pipeline to secure payment of a promissory note for $12,000 to DGNB. Upon default the 10% interest in the pipeline was sold by the substituted trustee and DGNB became the purchaser for $8,000. By decree of the Chancery Court of Jefferson County dated August 18, 1971, DGNB was declared to be the owner of a 10% interest in the pipeline subject to payment of 10% of all claims allowed by the court and 10% of all costs of repair and operation of the pipeline, including administrative costs.
DGNB obtained a consent judgment on January 12, 1971, in the Circuit Court of Lincoln County against John S. Roberts and his wife in the amount of $112,549.57. On the same date, in a separate suit, DGNB was awarded a judgment by the Lincoln County Circuit Court against Nelson Case, John S. Roberts and wife, Migonnie C. Roberts, in the amount of $10,614.97.
On March 31, 1971, DGNB filed a bill of complaint against John S. Roberts and Nelson Case and other defendants in the Chancery Court of Jefferson County alleging that Roberts and Case had fraudulently conveyed and assigned interests in the gas pipeline to the persons and in the percentages set forth in the bill of complaint. In its final decree dated October 9, 1974, the Chancery Court of Jefferson County cancelled assignments by John S. Roberts to *948 40% of his interest in the pipeline to the following persons:

 Melody J. Roberts 5%
 Mimi Roberts 5%
 Misti Roberts 5%
 Mr. and Mrs. Dan Calcote 5%
 John S. Roberts, Jr. 20%

However, the cancellation of the assignment to John S. Roberts, Jr. was made subject to a lien in favor of John S. Roberts, Jr. in the amount of $6,350 with interest at 6% from the date of the decree, the court holding that the conveyance to John S. Roberts, Jr. was for a valuable, but inadequate, consideration. The decree then provided:
The Complainant, Deposit Guaranty National Bank, is hereby awarded a lien in the amount of $136,714.45 (subject to the lien of John S. Roberts, Jr., on the undivided twenty percent (20%) interest) against the undivided forty percent (40%) interest hereby declared invalid, as well as any other undivided interest owned by John S. Roberts in the Alcorn Pipeline, from and after the date of the filing by Complainant with the Chancery Clerk of Jefferson County, Mississippi, of abstract copies of those certain judgments rendered against John S. Roberts in the Circuit Court of Lincoln County, Mississippi.
The Clerk of this Court is authorized and directed to issue a special writ of execution for the sale of all of John S. Roberts' undivided interest in the Alcorn Pipeline, and from the proceeds of such sale to pay the following items in the order listed:
a. All court costs and expenses of such execution;
b. From the sale of the undivided 20% interest, to John S. Roberts, Jr., $6,350.00, with interest thereon at the rate of six percent (6%) per annum from the date of this decree;
c. Deposit Guaranty National Bank, $136,714.45;
d. Any excess shall be paid to the Defendant, John S. Roberts.
On August 7, 1978, the Sheriff of Jefferson County conducted a sale on a writ of execution issued by the Chancery Clerk of Jefferson County pursuant to the final decree of Jefferson County Chancery Court of October 9, 1974. He offered for sale and sold all the right, title and interest of John S. Roberts in the pipeline to DGNB for $30,000. The sheriff paid the $30,000 to the Chancery Clerk of Jefferson County who disbursed it by paying all court costs and fees, including publication of notice of sale and $7,810.50 to John S. Roberts, Jr. to satisfy his lien with the remaining balance of $20,347.75 being paid to DGNB as judgment creditor.
Biglane carried out his duties as receiver successfully so that service was furnished Alcorn and revenues were sufficient to pay all claims and operating expenses. On November 9, 1977, DGNB filed a petition for termination of receivership and a bill of complaint for partition of real and personal property. DGNB alleged that it owned 10% of the assets of APC and the cash balance on hand was $34,691.74 and the only unpaid claim amounted to $3,000.
Later, on January 7, 1978, just a few days before the statute of limitations[2] had run, DGNB filed a suit in the Circuit Court of Lincoln County to renew the judgment against Roberts. Process was served on Roberts on April 13, 1978, but DGNB did not obtain another judgment in the Lincoln County Circuit Court. This action was dismissed as a stale case, reinstated on the docket, and was pending at the time of the trial of DGNB's petition for termination of receivership.
In November, 1980, DGNB amended its petition for termination of receivership and alleged that the property in the hands of the receiver was owned as follows:

 Mrs. J.W. Burt 2%
 Mrs. Dan Calcote 6%
 Richard E. Stratton, III 10%
 J.C. Burgess, III 11%
 Nelson Case 12 1/2%
 Melaine Case 15%
 Deposit Guaranty National Bank 43 1/2%

*949 Mr. D.A. Biglane, receiver for the APC filed his answer to the Bank's complaint on March 6, 1978. He stated that he had no objection to the termination of the receivership, but if the court ordered a termination of the receivership, the court should require the owners of the pipeline to appoint a qualified operator to supervise and operate the pipeline to assure an adequate gas supply for the benefit of the students at Alcorn University. The receiver did not file an answer to Count II because the requested relief for partition would take place after termination of the receivership. The receiver also suggested that the State of Mississippi and Mrs. J.W. Burt were indispensable and proper parties.
Defendant John S. Roberts filed a general demurrer on the ground that there was no equity on the face of the bill. He also filed a plea in abatement alleging that the relief sought was in contravention of the Mississippi Uniform Partnership law, [Sections 79-13-1 et seq., Mississippi Code Annotated (Supp. 1977)], and that the statutory provisions for partition were inapplicable. He sought an abatement of the case until the bank recast its bill of complaint.
Defendants Nelson Case, J.C. Burgess, Jr. and Richard E. Stratton, III answered and admitted that the receivership should be terminated and the receiver discharged. These defendants denied that DGNB was entitled to partition because of the Mississippi Uniform Partnership law. These defendants alleged that Stratton owned a 10% interest, J.C. Burgess, III an 11% interest and Nelson Case a 6 1/2% interest in APC.
On the Bank's motion for revivor, Jewel Calcote, Executrix of the Last Will and Testament of Dan K. Calcote, was joined as a party. In November, 1980, the court authorized DGNB to amend its bill to join J.C. Burgess, III as a defendant. On January 13, 1981, J.C. Burgess, III filed his separate answer and admitted that the receivership should be terminated but denied that the DGNB was entitled to have the property partited. Burgess alleged that under the Mississippi Uniform Partnership law no partition could take place without the consent of all the parties and that he withheld his consent.
At trial, the court permitted J.S. Roberts and Mrs. Calcote to adopt the answer of Burgess, Case and Stratton.
The case came on for hearing on March 12, 1981, and consisted of DGNB offering thirty-eight exhibits into evidence which showed most of the facts heretofore stated. In addition it introduced evidence as to the transfers and the interest of John S. Roberts, Nelson Case, Mrs. J.W. Burt[3], Richard E. Stratton, III, J.C. Burgess, III and Mrs. Jewell Calcote.
After DGNB rested, defendant Roberts requested leave to amend his answer to plead the statute of limitations. Over objection of DGNB the court granted leave for such amendment. After the parties had filed briefs with the court, the court then notified counsel that it would hear evidence on the affirmative defense of Roberts. At the June 25, 1981, hearing DGNB objected to reopening the case to allow Roberts to offer additional proof on his affirmative defenses.
The objection was overruled and Roberts offered the transcript of the action in the Lincoln County Circuit Court and the complete record in the Jefferson County Chancery Court case of DGNB v. John S. Roberts which was the suit to set aside fraudulent conveyances. Roberts was called as a witness to prove that he had been a resident of the state continuously since June 16, 1975, and had been out of the state ten or twelve days on business. The attorney for DGNB was called as a witness and testified that he was informed by the clerk's office in Lincoln County that process had not been served on Roberts in the suit filed by DGNB to renew the Lincoln County judgment. He requested the clerk's office to issue an alias summons which was returned "not found." He learned in December, *950 1975, that the case had been dismissed as a stale case when the clerk sent him a cost bill. He then obtained copies of the court file and found that Roberts had been served with process on April 13, 1978. The case was reinstated on motion of DGNB and was pending at the time of the trial. At the conclusion of the evidence the court held, among other things, the following:
(1) Opinion

"The question is whether the Chancery Court's action is a separate and independent suit or was tied to the Circuit Court judgment. From the verbiage used by the Court, it is clear that the Chancery Court suit was not separate and independent. Therefore, since the consent judgment (Exhibit No. 39) was dated the 12th day of January, 1971, and if there is no affirmative action on the part of Deposit Guaranty National Bank in any way of the filing of a suit for the renewal of judgment, the seven year statute of limitations would run against the Bank at Midnight on January 12, 1978." (R. 201-202)
* * * * * *
There is nothing in the record indicating that there has ever been a judgment renewing the judgment of Deposit Guaranty National Bank. Therefore, this court must take the position that this judgment was not renewed. Even if the statute of limitations was tolled by the filing of the suit to renew on January 7, 1978, this does not make valid the Sheriff's sale of Roberts' interest on August 7, 1978. Therefore, it is the conclusion of this Court that Deposit Guaranty National Bank owns only 10% interest in Alcorn pipeline." (R. 202-203)
"This leads the court to the question as to the present status of the association known as Alcorn Pipeline Company. The court is of the opinion that this is a partnership, though dormant and inactive, and, upon the dissolution of the receivership, if the pipeline company is to continue in business, it must comply with the Uniform Partnership Act and there can be no dissolution unless it is within the purview of the Uniform Partnership Act. * * * "The court is of the opinion that there are no grounds or reasons before the court at this time for a dissolution of the partnership to be made by decree of the court." (R. 205-206)
The court then entered a final decree holding that DGNB owned a 10% interest in the pipeline, denied the petition for partition, terminated the receivership, and retained jurisdiction to see that an adequate supply of natural gas was delivered to Alcorn State University.

ASSIGNMENTS OF ERROR
Deposit Guaranty National Bank appealed and assigned as error the following:
1. The trial court erred in reopening the case for a second trial and in refusing to strike Roberts' answer.
2. The trial court erred as a matter of law in holding void the execution sale of August 7, 1978, and in limiting Deposit Guaranty's interest in the Pipeline to 10% when the Bank owns a 50% interest.
3. The trial court erred as a matter of law in refusing to partition by sale the Pipeline.

-1-
The trial court did not err in reopening the case to hear additional evidence and in refusing to strike Roberts' answer because it is a familiar rule that amendments to pleadings are liberally allowed and that pleadings may be reformed to conform to the proof. Section 11-5-53 Mississippi Code Annotated (1972). The matter is properly addressed to the discretion of the chancellor. Hilton v. Evans, 208 So.2d 778 (Miss. 1968). Moreover, as Justice Griffith stated in his work on Chancery Practice in Mississippi,
If however, it is clear that no surprise or injustice would happen, amendments are allowed in the pleadings at the hearing to conform to the proof almost as a matter of course, and this is true even after the proof has been closed. [Griffith, Mississippi Chancery Practice, § 568 (1950 ed.)]
*951 The liberality of granting amendments is especially cogent where the facts forming the basis for the amendment are found in public records. See Hart v. Potter, 80 Miss. 796, 31 So. 898 (1902).
As pointed out in Hart, where the facts are contained in the public records, there is little danger in the facts being manufactured. In the present case, the dates and facts necessary to determine the merits of the statute of limitations defense were matters of public record. No prejudice, by surprise or otherwise, could have been suffered by appellant.
On the case in chief DGNB introduced as Exhibit 38 a copy of the bill of complaint filed by it against John S. Roberts and others to set aside certain conveyances alleged to be fraudulent. DGNB alleged that Roberts was indebted to it by virtue of a judgment from the Circuit Court of Lincoln County dated January 12, 1971 in the amount of $112,549.57, a copy of the judgment being annexed as Exhibit N to the bill of complaint. It also alleged that Roberts was indebted to it in the amount of $10,614.97 by virtue of another judgment from the Circuit Court of Lincoln County dated January 12, 1971 annexed as Exhibit O to the bill of complaint.
DGNB introduced as Exhibit 15 a final decree in the Jefferson County case which awarded it a lien in the amount of $136,714.45,
"From and after the date of the filing by complainant with the Chancery Clerk of Jefferson County, Mississippi of abstract copies of those certain judgments rendered against John S. Roberts in the Circuit Court of Lincoln County, Mississippi."
The final decree also set aside conveyances by Roberts to his children and the parents of his wife as heretofore shown in the statement of facts.
DGNB also introduced Exhibits 16, 17 and 18 which were the sheriff's deed and bill of sale, the report of the sheriff on the execution sale, and the report of the clerk on the execution sale.
On the face of these documents it appears that the execution sale, which was based on the Lincoln County judgment was held more than seven years after the date of the judgment and it does not appear that the Lincoln County judgment had been renewed by an order of the Lincoln County Circuit Court.
We hold that the chancellor properly permitted Roberts to amend his answer and raise the statute of limitations because the proof of DGNB shows that the execution sale was made after the judgments were barred by the statute of limitations.

-2-
In its second assignment of error DGNB argues that the trial court erred by holding the execution sale of August 7, 1978, was void and in limiting DGNB's interest in the pipeline to 10% when the Bank owns a 50% interest.[4]
The Bank first argues that the execution of the bill to set aside fraudulent conveyances filed by it in the Chancery Court of Jefferson County had the effect of renewing the judgment rendered by the Lincoln County Circuit Court. We reject this argument because a suit to renew or revive a judgment must be brought in the court where the original judgment was obtained. In this case the only court having jurisdiction to renew the judgment was the Circuit Court of Lincoln County. 49 C.J.S., Judgments, § 541 (1979).
In the alternative DGNB argues that the seven year statute of limitations had not run against the Lincoln County judgment of January 12, 1971, because it had filed its declaration to renew the judgment against Roberts in Cause No. 14,414 in the Lincoln County Circuit Court on January 7, 1978. The suit to renew the judgment was filed before the expiration of seven years from the date of the original judgment. This *952 suit was to renew the judgment for $112,549.57. The record does not reveal that the Bank filed suit to renew the judgment against Nelson Case, John S. Roberts and wife, Migonnie C. Roberts in the amount of $10,614.97.
The execution sale on August 7, 1978, was held more than seven years after the Lincoln County judgment of January 12, 1971, and the fact that the Bank had filed an action in the Lincoln County Circuit Court to renew the judgment did not authorize an execution on the judgment until the judgment had been renewed.
In Buckley v. Riley Mercantile Company, 155 Miss. 150, 124 So. 267 (1929), appellee recovered a judgment on August 23, 1921. A suit to renew the judgment was filed on August 15, 1928, and was pending when a writ of garnishment was issued on October 4, 1928. The Court held that the lien of a judgment on which an action is brought is kept alive by bringing the action, but when a new judgment is recovered renewing the original judgment, the lien is brought forward into the new judgment. The court held that executions and all other process to enforce the lien must be issued on the new judgment.
In Anderson-Tully Company v. Brown, 383 So.2d 1389 (Miss. 1980) we held:
Under Mississippi Code Annotated § 15-1-43 (1972), after seven years a judgment as well as an execution thereon effectively lapses. According to Mississippi Code Annotated § 15-1-47 (1972), a judgment lien expires in seven years unless suit is brought on the judgment. In commenting on judgments rendered by courts in Street v. Smith, 85 Miss. 359, 37 So. 837 (1905), we held that a judgment lien:
Can be extended by the filing of another suit upon the judgment before the expiration of seven years from the date of the rendition thereof, and in no other manner. (85 Miss. at 364, 37 So. at 838).
In the case now before us it is undisputed that no suit was filed to renew or extend the judgment which Cook had obtained against Brown, and the seven year statute had run. The law is clearly established in this state that a garnishment proceeding is no longer valid upon the facts of this case after lapsing of the judgment upon which garnishment is issued. Once Cook's judgment against Brown became extinguished by the running of the limitations statute, judgment creditor Cook had no "valid claim to the funds in controversy." Grace v. Pierce, 127 Miss. 831, 838, 90 So. 590, 592 (1922). Our opinion in Grace further provides that the issuance of a writ of garnishment:
[B]efore the bar of the statute attached did not serve to extend or keep alive the lien of these judgments ... the judgment lien is created by the final decision of a court, so it can only be renewed or extended by a similar process. The lien of a judgment can be extended by the filing of another suit upon the judgment before the expiration of seven years from the date of the rendition thereof, and in no other manner. (127 Miss. at 837-8, 90 So. at 592).
As far back as 1895, we held that after the running of the limitations period pursuant to what is now Mississippi Code Annotated § 15-1-3 (1972) there is the resulting extinguishment of "the right as well as the remedy." Proctor v. Hart, 72 Miss. 288, 16 So. 595 (1895). More recently, in Hawkins v. Southern Pipe & Supply Company, 259 So.2d 696 (Miss. 1972) we followed the rule of Proctor v. Hart, supra. (383 So.2d at 1390).
The suit to renew the 1971 judgment is still pending and we hold that Anderson-Tully and Buckley control this case. An execution could not be levied on the 1971 judgment seven years after the date of the judgment. If the judgment is renewed, an execution may be issued to enforce the new judgment.
Since the suit to renew the judgment is still pending in the Circuit Court of Lincoln County, we remand this case but abate retrial until a final judgment is rendered in the Lincoln County Circuit Court. If the 1971 judgment is renewed, an execution *953 may be issued to enforce the judgment. If the judgment is not renewed, an execution may not be issued to enforce the 1971 judgment.
The chancellor properly held that the Jefferson County Chancery Court case to set aside fraudulent conveyance was not a renewal of the Lincoln County judgment. We affirm this holding because the chancery case only involved the question of setting aside fraudulent conveyances, not renewal of a judgment of another court. DGNB's right to bring action to set aside fraudulent conveyances was based on the fact that it was a judgment creditor of Roberts stemming from the 1971 Lincoln County judgments.
We therefore affirm the finding of the chancellor that the execution sale was void, but remand the case for trial after DGNB's Lincoln County suit to renew the judgment is concluded.

-3-
The third assignment of error is that the trial court erred as a matter of law in refusing to order a sale of the pipeline for division of proceeds. The Uniform Partnership Law was enacted in 1976 and was effective April 1, 1977. DGNB did not file its petition to terminate the partnership until November 9, 1977, which was after the effective date of the act. However, DGNB argues that under section 79-12-7(5) Mississippi Code Annotated (Supp. 1977) the Uniform Partnership Law is not applicable.
(5) This chapter shall not be construed so as to impair the obligations of any contract existing when the chapter goes into effect, nor to affect any action or proceedings begun or right accrued before this chapter takes effect except as provided in section 79-12-15(4).
DGNB first argues that the partnership was dissolved when it acquired a 10% interest in APC by virtue of the trustee's sale of a 10% interest of John S. Roberts, and subsequent transfers by other partners of the partnership. On the happening of these events DGNB did not bring an action to dissolve the partnership.
A receiver was appointed for the partnership on August 23, 1968, and DGNB filed a claim against the receivership. On August 18, 1971, the court declared DGNB to be the owner of a 10% interest in the pipeline and also declared DGNB to be an unsecured creditor against the assets of the receivership in the amount of $12,500. The other claims of DGNB filed in the receivership proceedings were denied and dismissed with prejudice. The record does not disclose the nature of the claims which were denied and no appeal was taken from the order.
DGNB did not attempt to assert its right to sell its 10% interest in the pipeline before the receiver was appointed. DGNB made no effort to attack the fact of the existence of the partnership until it filed its petition to terminate the receivership in 1977 after the Uniform Partnership Law became effective. We therefore hold that DGNB waived its right to question the existence of the partnership by filing its claim against the receiver and by deferring any action until after the Uniform Partnership Law became effective. Upon retrial the court will determine the rights and liabilities of the parties under the terms and provisions of the Uniform Partnership Law.

-4-
None of the parties raised the question of the decree of the chancellor terminating the receivership. This important question must be dealt with because the record does not show that two indispensable and necessary parties were served with process or participated in the proceedings to terminate the receivership. The State of Mississippi filed a bill to appoint a receiver for the partnership operating under the name of Alcorn Pipeline Company for the Board of Trustees of the Institutions of Higher Learning to insure that Alcorn University (then Alcorn A. & M.) would receive an adequate supply of natural gas during the life of the contract. As set forth in the statement of facts, the partnership entered into a contract with the Board of Institutions of Higher Learning in 1967 to furnish natural gas to Alcorn University for a period *954 of twenty years after the completion of the pipeline. Apparently the pipeline was completed in 1968, so the contract would not terminate until 1988. We are of the opinion that the State of Mississippi was a necessary and indispensable party and the receivership should not have been terminated without process being served upon the state.
Furthermore, one of the original partners, J.W. Burt, died and according to the record, his 2% interest in the partnership is now owned by his wife. The record does not show that Mrs. Burt was served with process. Neither the State of Mississippi nor Mrs. Burt filed any pleadings or appeared at the hearing on petition to terminate the receivership.
We therefore reverse the order of the chancellor terminating the receivership and direct that the petition be abated until the State of Mississippi and Mrs. Burt are made parties to the petition.

CONCLUSION
By way of summary, we affirm the finding of the chancellor that DGNB owns a 10% interest in the pipeline, that the execution sale in 1978 by the Sheriff of Jefferson County was void and DGNB acquired no title by virtue of the sale, but reverse the decree insofar as it terminates the receivership.
We remand the case for hearing but direct that the hearing shall not be held until a final judgment is entered in the Lincoln County suit of DGNB to revive its judgment, and further abate the action until the State of Mississippi and Mrs. J.W. Burt are made parties to the action.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
PATTERSON, C.J., takes no part.

ON PETITION FOR REHEARING
DAN M. LEE, Justice, for the Court:
A petition for rehearing was filed in this cause on January 28, 1983, after a decision was handed down by this Court on January 14, 1983, which decision affirmed in part, reversed in part and remanded the cause to the chancellor.
The petition for rehearing assigns the following errors:
1. Bank was denied its right of oral argument by counsel, even though Bank's counsel made appropriate request under Supreme Court Rule 7(e).
2. The opinion failed to recognize that an action of debt is a proper form of action on a judgment; that such cause of action is entirely new and not a continuation of the former one; and that the execution sale on August 7, 1978, was conducted under the Jefferson County Chancery Court decree of October 9, 1974.
3. The opinion overlooked the $30,000 paid by Bank at the execution sale.
The facts are well stated in the opinion of Justice Sugg. However, certain facts that are assigned in the petition for rehearing concerning the denial of oral argument before the Supreme Court are not contained therein.
On December 3, 1981, the appellant filed the original and three copies of its brief, original abstract of record, and the original and three copies of summary statement, all of which were "brought in" to the Supreme Court Clerk's office on December 3, 1981. Upon examination of the Supreme Court Clerk's docket, notation of December 3, 1981, is shown on line five thereof. A copy of the docket in Cause No. 53,511 is attached hereto as Appendix A.
As to assignment No. 1 of the petition for rehearing, we have made an exhaustive search of the clerk's office revealed that transmittal letter, as is shown on unnumbered page 3 of the petition for rehearing, was attached to the back of appellant's abstract of the record which was delivered to the clerk's office together with appellant's brief and summary statement. Mississippi Supreme Court Rule 7(e) provides as follows:
(e) Attorneys for parties on appeal shall determine whether or not oral argument will be of benefit to the Court and their clients after all briefs have been filed. The attorney(s) desiring oral argument may file a letter with the clerk, *955 with copy to opposing counsel, of his request for oral argument within ten days after the time for appellant to file the rebuttal brief. Where no such letter is filed within the time prescribed, the case will be at issue and a decision rendered in due course. This rule must be adhered to notwithstanding any notations placed on the briefs of the parties and shall apply to all appeals filed after July 1, 1978. (June 6, 1978).
Appellant's request for oral argument was not filed within ten days after the time its rebuttal brief was due. Therefore, rule 7(e) was not strictly complied with and the case was properly placed on the docket and submitted without oral argument on May 25, 1982.
This rule was adopted by the Court in an effort to curtail problems such as this one where the transmittal letter was attached to the backing of appellant's abstract of the record and not readily visible to the clerk's office. It was also an effort to effect a more precise way of requesting oral argument at a time when the need for oral argument became apparent and to prevent the increasing situations where the parties originally requested oral argument by notation upon their briefs but failed to appear before the Court when the case was called for argument. We therefore conclude that assignment No. 1 is without merit.
Assignment No. 2 is an attempt to reargue the question of whether the chancery action in 1974 was an "action in debt" on the judgment which question was answered in the original opinion and the cases cited therein. Anderson-Tully Co. v. Brown, 383 So.2d 1389 (Miss. 1980); and Buckley v. Riley Mercantile Co., 155 Miss. 150, 124 So. 267 (1929).
In this cause the original circuit court judgment was taken in Lincoln County, Mississippi, on January 12, 1971, and the declaration to renew the judgment against Roberts in Cause No. 41,414 was filed in Lincoln County Circuit Court on January 7, 1978. The suit to renew the judgment was filed before the expiration of seven years, but had not yet ripened into a judgment at the time of the execution sale in Jefferson County, Mississippi, pursuant to the chancery court decree to set aside certain assignments on August 7, 1978. Therefore, the opinion properly dealt with this question and in remanding the cause to the chancellor in order that a final judgment may be entered on the declaration to renew the judgment in Cause No. 41,414.
Much is said in the petition for rehearing about the language in the opinion which comments on the failure to have process on the attorney general and Mrs. J.W. Burt. Exhaustive search has been made and process or appearance of these parties is not found in the records of the Clerk of the Supreme Court. As indicated by copies forwarded since the opinion was handed down, process may have been had upon these parties, but simply omitted by the clerk and the court reporter from the record sent to this Court. Once again, we can only act upon those things that are contained in the record before this Court. This would be particularly true in this cause in that an attempt is apparently being made to supplement the record after the decision was handed down, which clearly cannot be done. Furthermore, the cause is reversed and remanded for all purposes and of course, the chancellor may have process upon these parties before him upon any final disposition of this cause. We find no merit in assignment No. 2.
Assignment of error No. 3 states: "The opinion overlooked the $30,000 paid by Bank at the execution sale." This assignment was treated in the opinion wherein it was stated: "Upon retrial the court will determine the rights and liabilities of the parties under the terms and provisions of the Uniform Partnership Law." And further stating: "We remand the case for hearing but direct that the hearing shall not be held until a final judgment is entered in the Lincoln County suit of DGNB to revive its judgment... ." All the equities may be adjusted by the chancellor after the determination of the suit to renew the judgment. We find no merit in assignment No. 3.
For the foregoing reasons, the petition for rehearing will be denied.
PETITION FOR REHEARING DENIED.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., took no part.
*956 
NOTES
[1] J.W. Burt was not named in the certificate of public convenience and necessity and the record does not disclose why he was not included as one of the owners of Alcorn Pipeline Company.
[2] Section 15-1-43 Mississippi Code Annotated (1972).
[3] DGNB amended its bill of complaint to join Mrs. J.W. Burt and the State of Mississippi as defendants; however, the record does not show that process was served on either of these defendants and they did not appear or plead.
[4] In the Bank's amended bill to terminate the receivership, it only claimed a 43 1/2% interest in APC. However, since we are remanding this case for another trial, the Bank may amend and claim whatever interest it is entitled to.